Filed 6/9/23  In re X.G. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re X.G., a Person Coming Under the Juvenile Court Law. | B324341 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.R. et al.,<br><br>Defendants and Appellants. | (Los Angeles County Super. Ct. No. 17CCJP02477B) |

APPEALS from an order of the Superior Court of Los Angeles County, Kristen Byrdsong, Judge Pro Tempore. Conditionally reversed with directions.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant C.R.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant A.G.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane E. Kwon, Deputy County Counsel, for Plaintiff and Respondent.

———————————

Mother and father appeal from the August 4, 2022 order terminating parental rights under Welfare and Institutions Code section 366.26[1] as to their youngest daughter (minor). Father's sole contention on appeal is that the court erroneously failed to ensure the Los Angeles County Department of Children and Family Services (the Department) complied with the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California statutes (Welf. & Inst. Code, § 224 et seq.). Mother joins in father's argument. The Department contends it complied with ICWA's inquiry requirements. Finding the court's ICWA determination erroneous, we conditionally reverse and remand solely for the juvenile court to ensure compliance with ICWA and related California statutes.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

# BACKGROUND[2]

The current appeal concerns only minor, the youngest of mother's three children. Father is the middle child's presumed father and minor's biological father. Mother's oldest child was the subject of two prior dependency cases, and was ultimately adopted in 2017. The middle child was the subject of a dependency case that started in 2014 and ended in 2016 with an order giving father sole custody of that child.

In December 2017, when the middle child was four years old and minor was a newborn, the Department filed a petition under section 300, alleging both children were at risk of harm based on mother's substance abuse, father's failure to protect, and the prior dependency cases involving mother's two older children (the oldest child and the middle child). The Department detained the middle child from father's custody and placed her with paternal grandparents, but were unable to locate mother or minor. At a December 15, 2017 detention hearing, father filed an ICWA-020 form indicating he might have Cherokee Indian ancestry. The court ordered the Department make appropriate ICWA inquiries. The court issued an arrest warrant for mother and a protective custody order for minor.

In January 2018, paternal grandfather denied any Indian ancestry. Paternal grandmother believed she might have some Aztec ancestry, but was unable to provide additional information.

---

[2] Because the sole issue on appeal concerns the juvenile court's and the Department's compliance with ICWA and related California law, we limit our recitation of facts to those relevant to that compliance issue, except as is necessary for context.

Neither mother nor minor had been located by March 2018. The Department conducted a due diligence search and noted that while paternal grandmother believed mother might be with the maternal grandmother, paternal grandmother did not have maternal grandmother's contact information. The court sustained the amended petition allegations as to the middle child, and ordered reunification services bypassed for mother.

In February 2020, the Department identified a possible new address for mother in San Diego, California. A dependency investigator contacted the San Diego Police Department, which identified the occupants of the apartment as a middle aged man and an older couple, all with the same last name as mother. The investigator and police officers visited the address twice, once on February 18, 2020 and a second time on February 26, 2020. On the first visit, the police and the investigator were not allowed to enter, but they communicated through the screen door and saw toddler-sized pink shoes and cartoons playing on the television. The older woman identified herself as maternal grandmother, but denied seeing mother or minor, and denied having any information about their whereabouts. Maternal grandfather came out and said he saw minor about a week and a half earlier, but denied that mother or minor had been staying at their home. After maternal uncle told maternal grandfather to go back into the home, the investigator arranged to speak through the screen door without officers present, and explained to maternal uncle that there was concern minor was living in the home, and a court order to remove minor that would stay active until minor was located. Maternal uncle asked for minor's date of birth, in a manner that the investigator took as testing the Department's information. He listened and asked questions, but did not

provide any additional information. The investigator left business cards for nearby neighbors, but no one reported seeing or hearing young children in the apartment. On the second visit, the police officers searched the home, but found no evidence of a child living in the home. Maternal uncle was upset about the presence of police officers, and maternal grandmother denied seeing mother in years. Maternal grandmother asked how long the search for minor would continue and what had happened to lead the Department to try to detain the child. Soon after an officer responded to maternal grandmother's question, a sergeant ended the interaction and asked the social workers to leave the home.

In March 2020, close to two years after the dependency court had issued warrants for mother and minor, both were identified during a traffic stop in Los Angeles. Mother was arrested for possession of drug paraphernalia, and minor was detained and placed in a foster home. Mother initially refused to provide any information to the social worker without a lawyer present, but she did ask for minor to be placed with the paternal grandparents or her oldest child's adoptive parents. Minor remained in the same foster home throughout the remainder of the dependency case.

In the fall of 2020, the Department obtained information relevant to claims of Indian ancestry by father and paternal grandmother, and sent two sets of ICWA notices to the relevant federal entities and tribes. In addition to information about minor's paternal relatives, the second set of notices also included information about mother (including her name, date and place of birth, and current and former addresses) and maternal grandparents (names, month and year of birth, and current

5

address).  None of the responses to the ICWA notices indicated that minor was tribal member or eligible for membership.

In April 2021, the court declared minor a dependent under section 300, subdivision (b), based on allegations of substance abuse by mother and father, father's failure to protect, and the parents' medical neglect of minor.

At the May 27, 2021 disposition hearing, the court ordered minor removed from parental custody, bypassed family reunification services for both parents, and ordered no visitation for the parents.

In June 2022, the Department sent an ICWA-20 form to maternal grandparents, along with a letter explaining the purpose of the form and asking them to complete and sign the form and return it in an enclosed self-addressed stamped envelope.  The social worker gave a phone number maternal grandparents could call if they had any questions.  There is no evidence in the appellate record that maternal grandparents received or responded to the letter or completed the form, or that the Department made any additional efforts to ask maternal grandparents or maternal uncle about Indian ancestry.

At a hearing under section 366.26 in August 2022, the court terminated parental rights, finding no reason to believe ICWA applied to minor, no statutory exception to adoption applied, and minor was adoptable.  Mother and father both filed timely notices of appeal.

## DISCUSSION

Father's sole argument on appeal is that the Department did not comply with its initial inquiry duty under section 224.2,

subdivision (b), because it did not interview maternal grandparents and maternal uncle about possible Indian ancestry.[3]  Mother joins in father's argument.  The Department contends it fully complied with its statutory duties, pointing to its inquiry and notice efforts, mother's denial of any Indian ancestry, and maternal grandparents' evasiveness when the Department was searching for mother and minor.  We agree with father that the Department did not comply with its initial inquiry duties.

The Department's inquiry duties under ICWA and related state law are well established.  Section 224.2 " ' "creates three distinct duties regarding ICWA in dependency proceedings.  First, from the [Department]'s initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).)  Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the [Department] 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id*., subd. (e), italics added.)  Third, if that further inquiry results in a reason to *know* the child is an Indian child,

_____

[3] Father's opening brief includes a section anticipating an argument that the Department does not make:  the duty of initial inquiry set forth in section 224.2, subdivision (b) does not apply when a child is detained pursuant to a protective custody warrant.  (See *In re Adrian L.* (2022) 86 Cal.App.5th 342, 355–373 (conc. opn. of Kelley, J..)  The Department waived any such argument, so we express no opinion on the matter.  "Issues do not have a life of their own:  if they are not raised or supported by argument or citation to authority, we consider the issues waived." (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.)

then the formal notice requirements of section 224.3 apply." ' " (*In re H.V.* (2022) 75 Cal.App.5th 433, 437.)

Of particular relevance here is section 224.2, subdivision (b), which imposes on the Department "a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, . . . extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child."[4] "Under ICWA, the term 'extended family member' is 'defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.' " (*In re A.C.* (2022) 75 Cal.App.5th 1009, 1015.) Although the duty to inquire of extended relatives under section 224.2, subdivision (b), is "commonly referred to as the 'initial duty of inquiry,' it 'begins with the initial contact' (§ 224.2, subd. (a)) and continues throughout the dependency proceedings." (*In re J.C.* (2022) 77 Cal.App.5th 70, 77.)

---

[4] Although the current language of section 224.2, subdivision (b) was not in effect when this case began in December 2017, it took effect well before the juvenile court terminated parental rights in 2022, and also before the Department had contact with maternal relatives in February 2020. (See Stats. 2018, ch. 833, § 5, eff. Jan. 1, 2019; *In re A.M.* (2020) 47 Cal.App.5th 303, 316 [noting that Assembly Bill No. 3176 became effective on January 1, 2019].)

"We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence." (*In re H.V.*, *supra*, 75 Cal.App.5th at p. 438.)

The Department contends it fully complied with its inquiry duties, making a few different arguments about why its efforts were sufficient. The Department took steps to obtain information and notify tribes in response to father's and paternal grandmother's claim of possible Cherokee or Aztec ancestry. At the same time, mother denied Indian ancestry and made no objection when the court found no reason to believe minor was an Indian child. The Department also mailed maternal grandparents a copy of the ICWA-20 form with instructions to complete and return.[5] The Department contends that failing to

---

[5] The Department does not argue that any ICWA inquiry error was harmless, instead arguing that written inquiry was reasonable because maternal relatives had been evasive and uncooperative, refusing to provide information to the Department. We recognize that the maternal relatives denied that mother or minor were staying at the address, but the social worker's summary of the two occasions she arrived at maternal relatives' home with police officers does not support an inference that the relatives would have refused to answer any questions about possible Indian ancestry. On the first visit, maternal grandfather spoke to the social worker, saying he had seen "the baby" a week and a half earlier, and she appeared healthy. Although maternal uncle refused to allow the police or social worker to enter the home, he listened as the social worker explained the concerns about minor's safety, and asked whether the social worker knew minor's date of birth. Maternal grandmother denied having any information about the whereabouts of either mother or minor, but during the second visit, she was asking what happened that led to the Department

9

raise any objection to the adequacy of the ICWA notices, both parents tacitly approved of the sufficiency of the inquiry needed to complete and send those notices.

We reject the Department's argument that notices sent after father and paternal relatives claimed Indian ancestry satisfies its duty to ask maternal relatives if they have any information about possible Indian ancestry. (See, e.g., *In re Y.W.* (2021) 70 Cal.App.5th 542, 548, 552–553 [where ICWA notices were sent to tribes based on father's claim of Indian ancestry, absence of attempt to contact maternal grandparents was initial inquiry error].) Taken alone, mother's denial of Indian ancestry is an insufficient basis to find the Department's inquiry obligations were satisfied. "By requiring the Department to inquire of a child's extended family members as to the child's possible Indian ancestry, the Legislature determined that inquiry of the parents alone is not sufficient." (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 431.)

While the Department takes the position that the act of sending a written form to maternal grandparents itself satisfied its duty of initial inquiry, we disagree based upon the particular facts before us. The Department's dependency investigator met maternal grandparents and uncle when looking for mother and minor in February 2020; but there is no record of additional contact for more than two years, and the Department did not verify the continuing validity of maternal relatives' address when

---

trying to detain minor. These interactions do not lead us to conclude that it would have been either unwarranted or futile for the social worker to ask about possible Indian ancestry.

it sent a written request in June 2022.[6]  In addition, the maternal grandparents were instructed to respond to either confirm or deny the possibility of Indian ancestry.[7]  The lack of a response therefore did not assist the Department in making any inference as to whether grandparents either did or did not have information about minor's Indian ancestry.  The Department received no response yet did nothing to determine why or to follow-up.  The duty to inquire "includes, but is not limited to, asking." (§ 224.2, subd. (b).)  While a written inquiry could be sufficient on different facts, the circumstances here do not support the conclusion that the Department made a "meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709.)  Given the passage of two years and the absence of any response to the written inquiry, the lack of any attempt to either confirm the address or follow up to obtain a response leads us to conclude the Department fell short of its inquiry duty.  (See *In re A.C.*, *supra*, 75 Cal.App.5th at p. 1015 [agency failed to make a

---

[6] We note that the Department sent its written request to maternal grandparents, but did not send any similar inquiry to maternal uncle.

[7] The letter instructed the grandparents to complete and return the ICWA-20 form, advising them to "mark item (d.) and date and sign" the form if they did not have Indian ancestry, and to mark other check boxes if the family had Indian ancestry.  The letter included a phone number for the maternal grandparents to call if they had any questions as well.

meaningful effort to ask readily available extended relatives about Indian ancestry].)

We conclude that the Department's failure to inquire of any known maternal relatives, including maternal grandparents and maternal uncle, about Indian heritage constitutes reversible error. We will therefore conditionally reverse and remand for the juvenile court to ensure the Department complies with its duties under ICWA and related state law. (*In re H.V.*, *supra*, 75 Cal.App.5th at p. 438.)

## DISPOSITION

The juvenile court's August 4, 2022, order terminating parental rights under Welfare and Institutions Code section 366.26 is conditionally reversed and remanded for proceedings required by this opinion. The court shall order the Department to make reasonable efforts to locate and interview available maternal relatives, including maternal grandparents and maternal uncle, about the possibility of the minor's Indian ancestry and to report on the results of the Department's investigation. Nothing in this disposition precludes the court from ordering additional inquiry of others having an interest in the minor. Based on the information reported, if the court determines that no additional inquiry or notice to tribes is necessary, the order terminating parental rights is to be reinstated. If additional inquiry or notice is warranted, the court shall make all necessary orders to ensure compliance with ICWA and related California law.

NOT TO BE PUBLISHED.


MOOR, J.


I concur:


RUBIN, P. J.

13

In re X.G.
B324341


BAKER, J., Dissenting


      The majority believes no substantial evidence shows the juvenile court supervised an adequate inquiry into whether there is some chance of Indian ancestry on the maternal side of the family.  That conclusion is flawed because the Los Angeles County Department of Children and Family Services (DCFS) did inquire of the maternal grandparents via forms sent by mail.  The majority just dismisses the inquiry DCFS undertook—for two reasons that do not hold up to scrutiny.

      First, the majority apparently believes the maternal grandparents did not receive the mailed forms.  This is inconsistent with rudimentary law.  (Evid. Code, § 641 ["A letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail"].)  The majority's response is to suggest—without actually coming out and saying it—that the grandparents were not still living at the same address.  This sub rosa speculation (nothing in the record provides reason to believe the maternal grandparents moved from that address) is inconsistent with the governing standard of review.  (See, e.g., *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688-689 [in making a substantial evidence determination, a court reviews the record in the light most

favorable to the court's determinations and draws all reasonable inferences from the evidence to support the findings and orders].)

Second, the majority concedes a "written inquiry" into Indian ancestry can be sufficient but asserts the inquiry here was not because the grandparents were instructed to respond and DCFS did not "determine why" they didn't. This just misunderstands what DCFS's obligation was—and is. DCFS's duty is to inquire, not to discover the reasons why family members may not respond to inquiry efforts (thankfully so: the statutory inquiry provisions are unwieldy enough as they are (*In re A.C.* (2022) 86 Cal.App.5th 130, 143 (dis. opn. of Baker, J.)) and there are countless circumstances where family members do not respond to social worker voicemails, text messages, emails, or letters). DCFS inquired of the grandparents here, and the absence of a response in no way undermines the inquiry that was made.

Substantial evidence supports the juvenile court's Indian Child Welfare Act-related determination. I would affirm.


BAKER, J.


2